

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-24-2007

# Winer Family Trust v. Queen

Precedential or Non-Precedential: Precedential

Docket No. 05-3622

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Winer Family Trust v. Queen" (2007). *2007 Decisions.* Paper 325.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/325

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 05-3622

———————

THE WINER FAMILY TRUST, Individually
and on behalf of all others similarly situated,

Appellant

SEAN FITZPATRICK
(Intervenor in D.C.)

v.

MICHAEL QUEEN;
THOMAS McGREAL; JOSEPH W. LUTER, IV;
MICHAEL H. COLE; SMITHFIELD FOODS, INC.;
PENNEXX FOODS, INC.; SHOWCASE FOODS, INC.

———————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. Civil Action No. 03-cv-4318
(Honorable John R. Padova)

———————

Argued November 9, 2006

Before:  SCIRICA, *Chief Judge*,
McKEE and STAPLETON, *Circuit Judges*.

(Filed  September 24, 2007)

KIMBERLY M. DONALDSON, ESQUIRE (ARGUED)
STEVEN A. SCHWARTZ, ESQUIRE
Chimicles & Tikellis LLP
One Haverford Centre
361 West Lancaster Avenue
Haverford, Pennsylvania 19041

AVI N. WAGNER, ESQUIRE
Glancy, Binkow & Goldberg LLP
1801 Avenue of the Stars, Suite 311
Los Angeles, California 90067
        Attorneys for Appellant

RONALD J. MANN, ESQUIRE (ARGUED)
727 East Dean Keeton Street
Austin, Texas 78705

MAURICE R. MITTS, ESQUIRE
Mitts Milavec
1835 Market Street, Suite 1500
Philadelphia, Pennsylvania 19103

ERIC F. SPADE, ESQUIRE
748 South Fifteenth Street
Philadelphia, Pennsylvania 19128
        Attorneys for Appellees,
        Michael Queen, Thomas McGreal, Pennexx Foods, Inc.

TERENCE J. RASMUSSEN, ESQUIRE (ARGUED)
EDWARD J. FUHR, ESQUIRE
ERIC H. FEILER, ESQUIRE
JESSICA M. ERICKSON, ESQUIRE
MONICA S. CALL, ESQUIRE
Hunton & Williams LLP
Riverfront Plaza, East Tower, 13th Floor
951 East Byrd Street
Richmond, Virginia 23219

ALAN K. COTLER, ESQUIRE
MILIND M. SHAH, ESQUIRE
Reed Smith LLP
2500 One Liberty Place, 1650 Market Street
Philadelphia, Pennsylvania 19103-7301
        Attorneys for Appellees,
        Joseph W. Luter, IV, Michael H. Cole,
        Smithfield Foods, Inc., Showcase Foods, Inc.

## OPINION OF THE COURT

SCIRICA, *Chief Judge*.

At issue in this private securities fraud class action is whether plaintiffs properly pleaded false and misleading statements and material omissions on the company's earnings potential and stock value, in violation of the Securities and Exchange Act of 1934. The District Court granted defendants' motions to dismiss for failure to meet the pleading requirements of the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4 et seq ("PSLRA"). While this appeal was pending, the Supreme Court set forth the pleading standard for the PSLRA. *Tellabs, Inc. v. Makor Issues & Right, Ltd.*, 127 S. Ct. 2499 (2007); *Key Equity Investors, Inc. v. Sel-Leb Marketing, Inc.*, No. 06-1052, 2007 WL 2510385 (3d Cir. Sept. 6, 2007). We will affirm.

## I. Facts and Procedural History

Plaintiffs are former shareholders of Pennexx Foods, Inc., a Pennsylvania corporation that provides case-ready meat to customers in the northeastern United States. Defendants are Pennexx; Smithfield Foods, Inc., a Virginia corporation that produces, processes, and markets a variety of meat products; directors and officers of Pennexx and Smithfield Foods; and Showcase Foods, Inc., a subsidiary of Smithfield Foods.

4

In June 2001, Pennexx entered into a stock purchase agreement with Smithfield Foods. Smithfield Foods agreed to purchase fifty percent of the outstanding shares of Pennexx for $6 million and to extend Pennexx a revolving line of credit up to $30 million, secured by Pennexx's assets. Smithfield Foods nominated two of its executives, defendants Joseph Luter IV and Michael Cole, to Pennexx's board of directors. In April 2002, Pennexx purchased a meat processing facility in Philadelphia, the Tabor Facility. In May 2002, with Smithfield Foods's assistance, Pennexx began renovating the building, and in July 2002 moved its operations into the Tabor Facility. Renovations continued for the next several months.

Shortly thereafter, Pennexx defaulted on its repayment obligations to Smithfield Foods. Over the objections of Luter and Cole, Pennexx issued additional stock to raise capital. In January 2003, Luter and Cole resigned as Pennexx directors. Subsequently, Smithfield Foods demanded all delinquent amounts under its credit agreement and pursued a replevin action. On June 9, 2003, under a consent decree, Smithfield Foods foreclosed on all of Pennexx's real and personal property. Showcase Foods then took over the Tabor Facility.

This class litigation followed. The Winer Family Trust had purchased 5000 shares of Pennexx stock on May 22, 2002. Based on this purchase, Winer filed a class action complaint against Pennexx, Smithfield Foods, executives and officers of both companies, and Showcase Foods. Winer claimed Pennexx had inflated the price of its stock through public statements and

5

earnings reports that omitted or misstated material facts. Winer was appointed lead plaintiff in November 2003.

Winer's suit alleged federal and state causes of action on behalf of two separate classes. On behalf of public investors who purchased Pennexx securities during the period from February 8, 2002, until June 12, 2003, Winer alleged violations of § 10(b) of the Securities and Exchange Act, as amended by the Private Securities Litigation Reform Act of 1995, 15 U.S.C. §§ 78j(b), 78t(a), and Rule 10b-5, *see* 17 C.F.R. § 240.10b-5, against Pennexx and individual defendants Michael Queen, President of Pennexx; Thomas McGreal, a director and Vice President of Sales for Pennexx; and Smithfield Foods executives Luter and Cole ("Individual Defendants"). Winer also alleged violations of § 20(a) of the Securities and Exchange Act against Smithfield Foods and the Individual Defendants. On behalf of public investors who currently own Pennexx securities, Winer asserted state law claims for breach of fiduciary duty against Queen and Smithfield Foods, aiding and abetting claims against Luter and Cole, and successor liability claims against Smithfield Foods and Showcase Foods.

On September 27, 2004, the District Court granted defendants' motions to dismiss the Rule 10b-5 claims, except for several claims against Pennexx and Queen based on the challenged statements and omissions made after May 22, 2002, the date Winer purchased its stock. The Court also granted the motions to dismiss with respect to the breach of fiduciary duty claims against Queen, Smithfield Foods, Luter, and Cole. The

6

Court denied defendants' motions to dismiss the § 20(a) claims and successor liability claims based on Rule 10b-5 for several statements and omissions occurring after May 22, 2002.

Winer then sought leave to amend, purportedly curing pleading deficiencies and amplifying previous allegations based on new information. This new information came from additional discovery permitted in July 2004 involving the June 2004 closing of the Tabor Facility. In an order dated January 18, 2005, the District Court denied Winer leave to file the proposed amendments, finding them futile.

Winer's only remaining claims were based on statements made by defendants after the date of Winer's stock purchase. As a result, Smithfield Foods filed a motion to dismiss contending Winer lacked standing. On February 11, 2005, the court entered an order that by agreement of the parties Winer withdrew as lead plaintiff without prejudice to pursue an appeal as former lead plaintiff. After plaintiffs failed in their attempt to substitute other lead plaintiffs, the District Court, on June 29, 2005, dismissed the case for lack of prosecution.

Winer timely appeals the September 27, 2004 Order partially granting defendants' motions to dismiss, the January 18, 2005 Order denying leave to file its proposed amendments, the February 11, 2005 Order withdrawing Winer as lead plaintiff, and the June 29, 2005 Order dismissing the action.

The focus of this appeal is Pennexx's statements about its business relationship with Smithfield Foods and the renovation

of the Tabor Facility. Winer contends Smithfield Foods "abused" Pennexx in a prior business deal, and that Pennexx omitted material facts about this prior relationship in a February 8, 2002 press release. The February 8 press release credited Smithfield Foods's loan to Pennexx as a factor allowing Pennexx to list its stock on the over the counter Bulletin Board. The press release also referred favorably to Pennexx's business prospects and "growing demand."

Winer also challenges statements and filings involving renovations to the Tabor Facility. On February 20, 2002, Pennexx announced its agreement to acquire the Tabor Facility, stating it was "perfectly suited to our needs," and required "minimal improvements." In a March 29, 2002 SEC filing, Pennexx estimated the cost of purchasing, renovating, and equipping the Tabor Facility to be between $10.5 million and $15 million. Pennexx purchased the Tabor Facility on April 2 for $2 million and announced the acquisition on April 3. In an April 17 filing, Pennexx's revised estimates ranged from $8.5 million to $16 million total for purchasing, renovating, and equipping the Tabor Facility. On May 15 Pennexx again revised its cost estimate for purchasing, renovating, and equipping the Tabor Facility to between $11.5 million and $16 million. Pennexx began renovating the Tabor Facility with Smithfield Foods's assistance in May, and moved into the facility in July 2002.[1]

---

[1]Winer alleged additional misleading or incomplete statements made by Pennexx after it bought its shares on May

As lead plaintiff, Winer also asserted state law claims for breach of fiduciary duty. Winer contends Queen breached his fiduciary duty by signing a forbearance agreement on May 29, 2003, which called for a broad release of claims that could have been asserted against Smithfield Foods by Pennexx and its shareholders. In the forbearance agreement, Pennexx agreed to pay outstanding loan obligations and expenses totaling approximately $13 million by June 9, 2003 and generally release Smithfield Foods from all obligations and liabilities other than those set forth in the agreement. Smithfield Foods agreed to forbear from exercising its rights and remedies until June 18, 2003, provided Pennexx complied with its obligations, and to assist Pennexx in its efforts to redomesticate itself in Delaware. Winer maintains that Smithfield Foods, frustrated in its attempts to purchase Pennexx outright, implemented a scheme to undermine Pennexx's ability to operate so that it could acquire Pennexx's assets and business opportunities at a discount and to the detriment of Pennexx's shareholders.

## II. Jurisdiction and Standard of Review

---

22, 2002, regarding the Smithfield Foods relationship, the Tabor Facility, Pennexx's second quarter 2002 financial losses, the termination of CFO George Pearcy, Pennexx's liquidity problems and increasing defaults under its credit agreement with Smithfield Foods, and Pennexx's overall prospects for growth. As discussed, Winer lacks standing to assert these claims because they were made after its stock purchase.

9

Winer filed this securities class action under §§ 10(b) and 20(a) of the Securities and Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t(a).  The District Court had jurisdiction under 28 U.S.C. § 1331 and supplemental and ancillary jurisdiction over the state law breach of fiduciary duty claims.  We have jurisdiction to review the final judgment of the District Court under 28 U.S.C. § 1291.

We exercise plenary review over the District Court's dismissal of a complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6), *Delaware Nation v. Pennsylvania*, 446 F.3d 410, 415 (3d Cir. 2006), and over the District Court's interpretation of the applicable federal securities laws. *Morrison v. Madison Dearborn Capital Partners III L.P.*, 463 F.3d 312, 314 (3d Cir. 2006).  We review the District Court's denial of Winer's request for leave to amend for abuse of discretion. *Kanter v. Barella*, 489 F.3d 170, 175 (3d Cir. 2007).

## III.

Winer contends the District Court erred in dismissing the amended complaint for failure to state a claim upon which relief may be granted and abused its discretion in failing to grant Winer leave to amend.

### A.  Standing

Constitutional standing requires: (1) an injury-in-fact, which is an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) a causal connection between the

10

injury and the conduct complained of; and (3) that it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Danvers Motor Co., Inc. v. Ford Motor Co.,* 432 F.3d 286, 290–91 (3d Cir. 2005) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). Plaintiffs have the burden to establish standing. *Id.* at 291 (citing *Storino v. Borough of Point Pleasant Beach*, 322 F.3d 293, 296 (3d Cir. 2003)). Winer's Rule 10b-5 claim is based on its purchase of Pennexx securities on May 22, 2002. The District Court dismissed all of Winer's Rule 10b-5 claims that were based on representations made after its purchase date.

The plaintiff class under Rule 10b-5 is limited exclusively to actual sellers or purchasers of securities. *See Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 754 (1975) (holding plaintiff did not qualify as either a purchaser or seller of stock and thus lacked standing to pursue a claim under Rule 10b-5). There is no private right of action under Rule 10b-5 for mere holders of securities. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71, 80 (2006) (citing *Blue Chip Stamps*, 421 U.S. at 739). Winer must be a purchaser or seller to pursue its Rule 10b-5 claims, and accordingly only has standing to assert claims based on activity prior to the date Winer purchased its stock.

In class action suits, Winer asserts, the lead plaintiff may base claims on statements and omissions occurring after its date of purchase. But it is still necessary for the lead plaintiff to establish its own standing based on a purchase or sale of stock,

11

and not merely the decision to retain stock.  *See Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998) (citing *Brown v. Sibley*, 650 F.2d 760, 770 (5th Cir. 1981)) ("A potential class representative must demonstrate individual standing vis-as-vis [sic] the defendant; he cannot acquire such standing merely by virtue of bringing a class action.").  The initial inquiry in either case is whether the lead plaintiff individually has standing, not whether or not other class members have standing.  Winer only has standing to pursue fraudulent conduct on or before its May 22, 2002 purchase date.

## *B. Applicable Pleading Requirements*

The amended complaint asserts Rule 10b-5 claims based upon reckless or intentional misstatements and omissions occurring on or before May 22, 2002.  *See* 17 C.F.R. § 240.10b-5(b) ("It shall be unlawful for any person . . . [t]o make any untrue statement of a material fact or to omit to state a material fact necessary to make the statements made in light of the circumstances under which they were made, not misleading . . . in connection with the purchase or sale of any security.").  Plaintiffs must also allege defendants made a misstatement or an omission of material fact with scienter in connection with the purchase or the sale of a security upon which plaintiffs reasonably relied and plaintiff's reliance was the proximate cause of their injury.  *Id.*

The Private Securities Litigation Reform Act of 1995 requires plaintiffs in a private securities action to specify each allegedly misleading statement, why the statement was

12

misleading, and, if an allegation is made on information and belief, all facts supporting that belief with particularity. 15 U.S.C. § 78u-4(b)(1)(B). Importantly, the PSLRA requires the applicable mental state be pleaded with particularity. *See id.* ("[T]he complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."). The District Court held that Winer failed to adequately plead scienter.

The Supreme Court has mandated a uniform construction of the strong inference standard in light of the objectives of the PSLRA. *Tellabs, Inc. v. Makor Issues & Right, Ltd.*, 127 S. Ct. 2499, 2508 (2007); *see Key Equity Investors, Inc. v. Sel-Leb Marketing, Inc.*, No. 06-1052, 2007 WL 2510385 (3d Cir. Sept. 6, 2007) (applying the pleading standard laid out by *Tellabs*); *Globis Capital Partners, L.P. v. Stonepath Group, Inc.*, No. 06-2560, 2007 WL 1977236, at *3 (3d Cir. July 10, 2007) ("The Court's *Tellabs* decision removes any doubt the PSLRA's scienter pleading requirement is a significant bar to litigation . . . ."). The twin goals of the PSLRA are to "curb frivolous, lawyer-driven litigation, while preserving the investors' ability to recover on meritorious claims." *Id*. at 2509. One of the purposes of the PSLRA's heightened pleading requirements is to limit abusive securities class-action suits. *See Dabit*, 547 U.S. at 81; *In re Advanta*, 180 F.3d at 531 (citing H.R. Conf. Rep. No. 104-369, at 28 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 748) (noting the PSLRA is designed to limit: "(1) the practice of filing lawsuits against issuers of securities in

13

response to any significant change in stock price, regardless of defendants' culpability; (2) targeting of 'deep pocket' defendants; (3) the abuse of the discovery process to coerce settlement; and (4) manipulation of clients by class action attorneys."). As the Supreme Court has recognized in the securities context, even class suits with little merit may have disproportionate settlement value. *See Tellabs*, 127 S. Ct. at 2504 (citing *Dabit*, 547 U.S. at 81); *Blue Chip Stamps*, 421 U.S. at 740–41.

The Court prescribed a three-step process for considering a motion to dismiss in a § 10(b) action: First, as with any Rule 12(b)(6) motion, courts must "accept all factual allegations in the complaint as true." *Tellabs*, 127 S. Ct. at 2509 (citing *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164 (1993)). Second, "courts must consider the complaint in its entirety." *Id.* This includes examining additional sources courts normally consider when ruling on a motion to dismiss, "in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Id*. (citation omitted). Courts must inquire "whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Id.* (emphasis in original) (citations omitted). Third, to determine whether the pleaded facts meet the PSLRA's "strong inference" standard, courts "must take into account plausible opposing inferences." *Id.*

14

In ruling that courts must consider plausible opposing inferences in a motion to dismiss, the Court set forth a reasonable person test, stating that the facts must give rise to a "strong," *i.e.*, a powerful or cogent inference that is at least as compelling as any opposing inference.

> But in [the PSLRA], Congress did not merely require plaintiffs to 'provide a factual basis for [their] scienter allegations' . . . . Instead, Congress required plaintiffs to plead with particularity facts that give rise to a "strong"—*i.e.*, a powerful or cogent—inference . . . .
>
> The strength of an inference cannot be decided in a vacuum. The inquiry is inherently comparative . . . . [A] court must consider plausible nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff. The inference that the defendant acted with scienter need not be irrefutable, *i.e.*, of the 'smoking-gun' genre, or even the 'most plausible of competing inferences,' . . . . Yet the inference of scienter must be more than merely 'reasonable' or 'permissible'—it must be cogent and compelling, thus strong in light of other explanations. A complaint will survive . . . only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing

15

inference one could draw from the facts alleged.

*Id.* at 2510 (internal citations omitted).

### C. *Tabor Facility Statements*

Winer challenges Pennexx's February 20, 2002 press release, in which the company announced it had agreed to purchase the Tabor Facility. In the press release, Queen, Pennexx's President, was quoted as stating:

> [The Tabor Facility] is perfectly suited to our needs, as it is strategically located in the central Northeast corridor and close to our customers. Since the new facility requires minimal improvement, we will be able to renovate and automate quickly and plan to be operational in this pristine facility by the second quarter of 2002.

Winer contends Queen's statements were knowingly false and misleading because they failed to disclose the facility needed a major overhaul costing over $18 million and requiring expert supervision. Winer maintains defendants never disclosed that Smithfield Foods, not Pennexx, exclusively controlled the purchase and renovation of the Tabor Facility, which resulted in a facility not designed to meet Pennexx's needs. Winer also contends Pennexx's press releases and SEC filings between March 29 and May 22, 2002, were misleading because they failed to disclose that, during a walking tour of the Tabor

16

Facility on or about March 28, 2002, Joseph Luter III[2] advised the Individual Defendants that Pennexx should spend whatever was necessary to make the Tabor Facility a high-quality operation.

Pennexx acquired the Tabor Facility on April 2, 2002. On April 17, 2002, Pennexx disclosed that the total estimated cost for purchasing, renovating and equipping the Tabor Facility would be between $8 million and $16 million. Pennexx later revised this estimate in May 2002 to between $11.5 million and $16 million.

The District Court found the most plausible inference from these events was that after the March 28, 2002 walking tour, Pennexx realized that the cost of renovations would be more extensive than previously estimated. This was disclosed to investors in the April 17 filing. Accordingly, the District Court held the amended complaint failed to allege facts giving rise to a strong inference that, as of February 20, 2002, Queen knew that the Tabor Facility would require anything more than minimal improvements.

On appeal, Winer contends the District Court erred in dismissing these claims because the PSLRA's "strong inference" pleading standard does not permit the resolution of

_____

[2]Joseph Luter III is President of Smithfield Foods and is not a defendant in this case. Joseph Luter IV is one of the individual defendants in this case and is referred to as "Luter" throughout the opinion.

17

disputed facts at summary judgment. The District Court accepted the facts alleged by Winer as true. It viewed those facts holistically in light of all additional facts alleged in the complaint. But the District Court found that the most plausible inference flowing from these facts was a non-culpable inference.

A complaint will survive a motion to dismiss "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs*, 127 S. Ct. at 2510. The District Court found the most plausible inference from Winer's alleged sequence of facts was that Pennexx revised its preliminary cost estimates as it learned more about the costs of renovating the Tabor Facility. Stated differently, Winer's purported inference, that the February statements regarding the Tabor Facility were knowingly false, was not as compelling or as strong as the opposing interest cited by the District Court.

In considering these inferences, the District Court properly probed documents attached to defendants' motion to dismiss. This was appropriate because these documents were integral to and/or were explicitly relied upon by the amended complaint. *See Tellabs*, 127 S. Ct. at 2509 ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."); *In re Burlington Coat Factory*, 114 F.3d at 1426 (holding a "'document *integral to or explicitly relied upon*

18

in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment'") (quoting *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996) (superseded on other grounds by the PSLRA, 15 U.S.C. § 78u-4(b)(1)–(2)); *TMJ Implants, Inc. v. Aetna, Inc.,* Nos. 06-1020, 06-1146, 2007 WL 2372372, at *3 (10th Cir. Aug. 21, 2007) ("Although we ordinarily limit our review [on a motion to dismiss] to the allegations in the complaint, we consider documents 'incorporated into the complaint by reference.'") (quoting *Tellabs*, 127 S. Ct. at 2509); *see also Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 166–69 (3d Cir. 2001) ("In reviewing a motion for class certification, a preliminary inquiry into the merits is sometimes necessary to determine whether the alleged claims can be properly resolved as a class action."). In considering competing inferences, courts may find it necessary to probe the documents integral to the complaint.

Thus, Winer's inference is neither cogent, nor compelling, nor strong in light of competing inferences.[3] A reasonable person would not deem the inference of scienter cogent and at least as compelling as any non-culpable inference.

---

[3]As the Court of Appeals for the Seventh Circuit held, the requirement that the inference be "at least as compelling" as any competing inference, *Tellabs*, 127 S. Ct. at 2510, dictates a more stringent standard than probable cause. *Higginbotham v. Baxter Intern., Inc.,* 06-1312, 2007 WL 2142298, at *3 (7th Cir. July 27, 2007) (citing *Illinois v. Gates*, 462 U.S. 213 (1983)).

*See Tellabs*, 127 S. Ct. at 2509–10; *see also Higginbotham v. Baxter Intern., Inc.*, 06-1312, 2007 WL 2142298, at \*4–5 (7th Cir. July 27, 2007) (holding an inference of scienter was "neither compelling nor cogent"); *Central Laborers' Pension Fund v. Integrated Electrical Services, Inc.,* No. 06-20135, 2007 WL 2367776, at \*5 (5th Cir. Aug. 21, 2007) (holding that when examining officer trading as a factor suggesting a strong inference of scienter, courts must consider both culpable and nonculpable explanations) (citing *Tellabs*, 127 S. Ct. at 2510); *ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 104 (2d Cir. 2007) (holding that where a "plausible nonculpable explanation[]" is more likely than any guilty inference, plaintiffs failed to establish scienter) (quoting *Tellabs*, 127 S. Ct. at 2510); *Belizan v. Hershon*, No. 06-7104, 2007 WL 2141954, at \*4 (D.C. Cir. July 27, 2007) (remanding to allow District Court to determine whether the inference that defendants acted recklessly was "at least as compelling as any opposing inference of nonfraudulent intent") (quoting *Tellabs*, 127 S. Ct. at 2505).

Winer also contends the statements made between March 29, 2002 through May 22, 2002 were actionable because they failed to disclose that Smithfield Foods's staff was performing the renovations of the Tabor Facility. The securities laws do not require a defendant "provide the public with all material information." *In re Burlington Coat Factory*, 114 F.3d at 1432 (citing *In re Time Warner, Inc. Sec. Litig.*, 9 F.3d 259, 267 (2d Cir. 1993)). To impose liability for non-disclosure, a defendant must be under a duty to disclose the omitted information. *Oran v. Stafford*, 226 F.3d 275, 285 (3d Cir. 2000) ("Even

20

non-disclosure of material information will not give rise to liability under Rule 10b-5 unless the defendant had an affirmative duty to disclose that information."); *see also Basic, Inc. v. Levinson*, 485 U.S. 224, 239 n.17 (1988) ("Silence, absent a duty to disclose, is not misleading under Rule 10b-5."). As a general matter, an affirmative duty arises only when there is insider trading, a statute requiring disclosure, or an inaccurate, incomplete, or misleading prior disclosure. *Oran*, 226 F.3d at 285–86. Pennexx points to no duty to disclose that Smithfield Foods's staff was renovating the Tabor Facility. The challenged statements—Pennexx's press releases and SEC filings—purported only to provide an outline of Pennexx's plans and objectives regarding future renovations. The District Court correctly held Pennexx had no duty to disclose that Smithfield Foods's staff was renovating the Tabor Facility. Taking the facts pleaded as true and viewing them holistically, a reasonable person would not deem the inference of scienter as cogent and at least as compelling as any non-culpable inference based upon the omitted facts. *See Tellabs*, 127 S. Ct. at 2509–10.

### D. Pennexx-Smithfield Foods Relationship

Winer challenges statements made in Pennexx's February 8, 2002 press release about the business relationship between Pennexx and Smithfield Foods. Queen stated Pennexx's common stock registration resulted from "the $36 million commitment that Smithfield Foods, Inc., the leading processor and marketer of fresh pork and processed meats in the U.S., made to our company in June 2001." Winer contends that a

21

prior venture between Smithfield Foods and Pennexx had been disastrous because Smithfield Foods had supplied Pennexx with water-injected pork products. Winer maintains the failure to disclose this prior venture in the February 2002 press release was misleading.

The District Court held defendants had no duty to disclose the previous business relationship. Liability may exist under Rule 10b-5 for misleading or untrue statements, but not for statements that are simply incomplete. *Brody v. Transitional Hospitals Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002) ("Rule 10b-5 . . . prohibit[s] *only* misleading and untrue statements, not statements that are incomplete . . . . Often, a statement will not mislead even if it is incomplete or does not include all relevant facts.") (emphasis in original and internal citation omitted)*; Blackman v. Polaroid Corp.*, 910 F.2d 10, 16 (1st Cir. 1990) (en banc) ("[The duty to disclose rule] does not mean that by revealing one fact about a product, one must reveal all others that, too, would be interesting, market-wise, but means only such others, if any, that are needed so that what was revealed would not be so 'incomplete as to mislead.'") (quoting *SEC v. Texas Gulf Sulfur Co.*, 401 F.2d 833, 862 (2d. Cir. 1968)). Winer fails to specify why the assertion that the equity investment made by Smithfield Foods helped facilitate Pennexx's registration of its common stock was misleading or untrue. Accordingly, the amended complaint did not sufficiently allege facts giving rise to a strong inference that Queen acted with scienter in making the statements at issue. *See* 15 U.S.C. § 78u-4(b)(2).

22

Moreover, Winer's allegation that Queen made the February 8, 2002 statement while cognizant of the prior Smithfield Foods-Pennexx relationship does not satisfy the scienter requirements because Queen's statement does not give rise to a strong inference that he acted with the required state of mind. Queen stated the $36 million commitment made Pennexx's stock listing possible—a statement which was true. Winer fails to sufficiently allege facts supporting a strong inference that Queen knew or recklessly disregarded the possibility that his statement was misleading. The District Court properly held Winer failed to adequately plead scienter for the February 8, 2002 statement.

### *E. Leave to Amend*

Winer contends the District Court improperly denied it leave to amend. Although leave should be "freely given when justice so requires," Fed. R. Civ. P. 15(a), we have held "'a District Court may deny leave to amend on the grounds that amendment would cause undue delay or prejudice, or that amendment would be futile.'" *In re Alpharma, Inc. Sec. Litig.*, 372 F.3d 137, 153 (3d Cir. 2004) (quoting *Oran* 226 F.3d at 291). The decision to grant a motion for leave to amend is within the sound discretion of the District Court. *Cureton v. Nat'l Collegiate Athletic Ass'n.*, 252 F.3d 267, 272 (3d Cir. 2001). The District Court determines futility by taking all pleaded allegations as true and viewing them in a light most favorable to the plaintiff. *See In re Alpharma*, 372 F.3d at 153–154. We review for abuse of discretion. *See Cal. Pub.*

23

*Employees Ret. Sys. v. Chubb Corp*., 394 F.3d 126, 163 (3d Cir. 2004).  The District Court held Winer's proposed amendments would be futile and denied leave to amend.

### *1. Tabor Facility Claims*

Winer contends new information alleged in the proposed amendments establishes scienter for Queen's February 20, 2002 optimistic statements about the renovation of the Tabor Facility and Pennexx's March 29 and April 17, 2002 SEC filings estimating the cost of the Tabor Facility.  Winer's proffered new information comes from: (1) the July 20, 2004 deposition of Mike Timmons, a Smithfield Foods engineer and a project leader for the renovations who stated the Tabor Facility was in "relatively poor shape"; (2) Queen's comments during a walking tour of the Tabor Facility on July 23, 2004; and (3) a budget estimate prepared by Robert McClain, a Smithfield Foods engineer and a project leader for the Tabor Facility renovations.  Winer contends these sources portray the Tabor Facility as being in disarray prior to renovations and that Pennexx understated the magnitude of the renovations required.

Winer challenges Queen's assertion on February 20, 2002, that the Tabor Facility required "minimal improvement."  Winer cites Queen's statements in 2004 that there had been a problem with the lighting in one area of the Tabor Facility and a "major issue[] in the plant that started to happen right away was that the floor was coming up."  The District Court found the proposed amendments futile because Winer did not plead that any defendant knew any statement was false or misleading when

24

made.  *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1330 (3d Cir. 2002) ("To be actionable, a statement or omission must have been misleading at the time it was made; liability cannot be imposed on the basis of subsequent events."); *Cal. Pub. Employees*, 394 F.3d at 158 ("We have long rejected attempts to plead fraud by hindsight."); *see also Tellabs,* 127 S. Ct. at 2508 ("The 'strong inference' formulation was appropriate, the Second Circuit said, to ward off allegations of 'fraud by hindsight.'") (citing *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1129 (2d Cir. 1994) (quoting *Denny v. Barber*, 576 F.2d 465, 470 (2d Cir. 1978) (Friendly, J.))).  Queen's February 20, 2002 statements were made in the early stages of a complex, evolving real estate transaction.  Within weeks of announcing its decision to purchase the Tabor Facility and before the acquisition was final, Pennexx released preliminary estimates that purchasing, renovating, and equipping the new facility would require substantial expenditures.  The District Court noted the most plausible inference was that Pennexx revised its cost estimates in response to new information and to negotiations during the intervening time period.  In this context, the District Court noted, the pleaded facts failed to support the requisite strong inference of reckless conduct, much less intentional conduct.  Stated differently, Winer's purported inference, that the statements regarding the Tabor Facility were knowingly false, was not as compelling or as strong as the opposing inference cited by the District Court.  Thus, Winer's inference is neither cogent, nor compelling, nor strong in light of competing inferences.  A reasonable person would not deem

25

the inference of scienter cogent and at least as compelling as any non-culpable inference. *See Tellabs*, 127 S. Ct. at 2509–10.

Winer also relies on Timmons's deposition and McClain's preliminary budget estimate to contradict Queen's February 20, 2002 statement. As the District Court noted, Timmons had not begun working at the Tabor Facility until weeks after Queen's challenged statements. Accordingly, the District Court found this was an impermissible attempt to prove fraud by hindsight. We agree.

McClain's higher estimate for purchasing, repairing and equipping the Tabor Facility was dated January 29, 2002. But the District Court noted that the version of McClain's preliminary budget estimate cited in the proposed amendments was attached to an email sent to Queen on March 1, a week after Queen made the challenged statements. But even assuming Queen had seen the McClain estimate prior to his February 20, 2002 statement, the District Court held that it failed to correct the scienter deficiencies. As noted, Queen's statement was made in the early stages of a "complex, evolving real estate transaction." In subsequent filings, Pennexx disclosed the Tabor Facility project would cost more than originally expected. The District Court found "the collective allegations of the [second amended complaint]" failed to give rise to a strong inference that Queen made the February 20, 2002 statement with scienter. We agree. A reasonable person would not deem the inference of scienter cogent and at least as compelling as any non-culpable inference. *See Tellabs*, 127 S. Ct. at 2509–10.

26

The District Court also found the McClain estimate did not cure the scienter deficiencies for allegations based on the March 29 and April 17 SEC filings. The District Court noted that McClain's estimate was "based on the information currently in hand" as of March 1, 2002, only nine days after Pennexx had entered into a preliminary agreement to purchase the Tabor Facility and over one month before Pennexx finalized the acquisition of the Tabor Facility. The District Court found the lower-end cost estimates contained in the challenged SEC filings corresponded to the limited principal advances permitted by Smithfield Foods under the parties' credit agreement as of March 29, 2002. McClain's higher cost estimates did not appear to consider the significant constraints on Pennexx's ability to finance the Tabor Facility project. The District Court found the most plausible inference was that Pennexx revised its cost estimates in response to new information and ongoing financial negotiations. Stated differently, Winer's purported inference was not as compelling or as strong as the opposing interest cited by the District Court. Thus, the inference is neither cogent, nor compelling, nor strong in light of competing inferences. A reasonable person would not deem the inference of scienter cogent and at least as compelling as any non-culpable inference. *See Tellabs*, 127 S. Ct. at 2509–10.

Moreover, the District Court found that Timmons's opinion could not give rise to a strong inference that Queen acted with scienter. Winer did not allege that Timmons conveyed his opinions on renovation and budgeting to Queen prior to his February 2002 statement or that Queen adopted

27

Timmons's opinions.  As the District Court noted, the proposed amendments never alleged that Timmons informed Queen of the poor condition of the Tabor Facility.  Winer failed to adequately plead scienter by failing to link the declarant of the challenged statement with facts that might contradict his statement.  *See* 15 U.S.C. § 78u-4(b)(2) (requiring plaintiffs to plead facts giving rise to a "strong inference" that "the defendant . . . acted with the required state of mind"); *see also Alpharma*, 372 F.3d at 150 ("[A]llegations that Williams, [a] subordinate [of an individual defendant], knew of the irregularities occurring in Brazil provide an insufficient basis upon which to impute knowledge to [that individual defendant]."); *Nolte v. Capital One Fin. Corp.*, 390 F.3d 311, 316 (4th Cir. 2004) (affirming dismissal where plaintiffs failed to plead that the speaking defendants "adopted [an employee's] opinion [that Capital One was undercapitalized] but then publicly declared that Capital One was maintaining sufficient capital").

Citing *Nursing Home Pension Fund Local 144 v. Oracle Corp.*, 380 F.3d 1226, 1233 (9th Cir. 2004), Winer contends Timmons's testimony provides a "substantial window" into the state of the Tabor facility at the time of Queen's February 20 statement.[4]  But *Oracle Corp.* is easily distinguishable on the

---

[4]In *Oracle*, the Court found the statements of a former vice-president of finance and other employees in conjunction with large stock sales by the CEO and CFO, the loss of a large number of deals, and improper revenue accounting records as critical in finding a strong inference of scienter.  *See Oracle*

28

facts.

Winer also contends Timmons's statements prove scienter for prior optimistic statements. But Winer relies on statements made at the beginning of the renovation of the Tabor Facility. Timmons had not even started working at the Tabor Facility at the time of Queen's February 20, 2002 statement. The underlying facts, when viewed in the context of the complex renovation, fail to support a strong inference of scienter. A reasonable person would not deem the inference of scienter cogent and at least as compelling as any non-culpable inference. The District Court did not abuse its discretion in finding that the proffered amendments failed to cure the scienter deficiencies of the original complaint.

### 2. Pennexx's Financial Condition

Winer contends the District Court abused its discretion by failing to grant leave to add allegations regarding Pennexx's financial condition. Winer challenges the statements in

_Corp._, 380 F.3d at 1231–33 ("A former vice president of finance stated that, on the basis of the information available to them, the defendants would have known at least six weeks prior to the end of the third quarter that the applications sales growth would miss projections by at least 50%."). The court held that "together, the false representations, both as to current facts and future estimated profits and sales, as well as the improper revenue adjustment and unusual stock sales" were sufficient to support a cause of action. _Id._ at 1234.

29

Pennexx's SEC filings on April 9, 2002, and May 15, 2002, that "all adjustments, including normal recurring adjustments, necessary to present fairly the financial position of the Company . . . and the results of its operations and cash flows . . . have been included." In support, Winer cites: (1) a report by Bart Ellis, Vice President for Operations at Smithfield Foods, dated August 2, 2002; (2) a memorandum by Jeffrey Deel, a Smithfield Foods employee, dated July 24, 2002; and (3) comments by Queen during the tour of the Tabor Facility in July 2004. According to Winer, these sources demonstrate Pennexx did not fairly present its financial condition accurately on a timely basis in reports to the SEC.

As the District Court noted, a complaint is actionable if it alleges that a defendant "was aware that mismanagement had occurred and made a material public statement about the state of corporate affairs inconsistent with the existence of the mismanagement." *Hayes v. Gross*, 982 F.2d 104, 106 (3d Cir. 1992) (discussing the holding in *Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 282 (3d Cir. 1992)). The District Court found none of Winer's newly asserted facts gave rise to a strong inference that defendants acted with scienter. The Ellis Report recounts Pennexx's problems in reporting financial results to Smithfield Foods on a weekly and monthly basis. But the District Court noted the Ellis Report did not demonstrate that Pennexx failed to "fairly present" its financial condition in its quarterly and annual SEC reports. Stating that Pennexx's "income statement[s] and balance sheet[s] are only published on a quarterly basis on the schedule demanded by SEC 10Q

30

requirements," the Ellis Report suggests Pennexx was filing timely reports with the SEC but not with Smithfield Foods. The District Court found the Deel Memorandum merely suggested methods for Pennexx to improve production and minimize losses. Queen's 2004 statements suffer from the defects already discussed regarding pleading fraud by hindsight. In these statements, Queen addressed the ability of Pennexx to calculate yield on a monthly basis, specifically referencing a failure to do so in February 2003. The District Court found these proposed amendments failed to support a strong inference that defendants knew or recklessly disregarded facts indicating Pennexx's lack of the internal controls necessary to file accurate financial statements in April and May 2002.

Citing *In re Ikon Office Solutions, Inc. Sec. Litig.,* 66 F. Supp. 2d 622 (E.D. Pa. 1999), Winer contends that Pennexx's history of failed internal controls demonstrates Pennexx could not accurately disclose its financial condition. But the allegations in *In re Ikon* were explicit and stronger, demonstrating "that the Company's internal controls were grossly deficient and that the financial data . . . was so pervasively inaccurate and unreliable that reliance on that information for financial statement purposes was precluded by GAAP and GAAS." *Id.* at 631. The District Court found none of Winer's proposed amendments supported a conclusion that the challenged statements were false or misleading—at most they suggested Pennexx was not timely in reporting to Smithfield Foods.

31

Moreover, the District Court found the proposed amendments devoid of allegations that defendants consciously or recklessly failed to improve the company's financial disclosure controls and procedures in response to the observations and recommendations made in the Ellis Report and Deel Memorandum. Even in the context of Winer's other allegations, the Ellis and Deel documents did not give rise to a strong inference of scienter for the pre-May 22, 2002 statements because they were created long after the challenged filings on April 9, 2002 and May 15, 2002. Neither document demonstrated the statements concerning Pennexx's ability to generate accurate financial information were false or misleading. Accordingly, the District Court held the proposed amendments failed to suggest defendants acted with scienter or that the challenged statements were false or misleading when made. The District Court did not abuse its discretion in finding futility.

## IV.

### A. *Group Pleading Doctrine*

Assuming Winer can properly plead violations of Rule 10b-5, it contends the Individual Defendants are liable for misrepresentations and omissions based upon the group pleading doctrine. "Smithfield [Foods] and the Individual Defendants were responsible for the accuracy of the public reports and releases detailed herein as 'group published' information, and are therefore responsible and liable for the representations contained therein." Specifically, Winer asserts liability on the

32

basis of the Individual Defendants' access to, control over, and ability to edit and withhold dissemination of Pennexx's press releases and SEC filings. In rejecting this argument, the District Court held the group pleading doctrine did not survive the specific pleading requirements of the PSLRA. We agree.

The group pleading doctrine is a judicial presumption that statements in group-published documents including annual reports and press releases are attributable to officers and directors who have day-to-day control or involvement in regular company operations. Under the doctrine, where defendants are insiders with such control or involvement, their specific connection to fraudulent statements in group-published documents is unnecessary. *See Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1440 (9th Cir. 1987) ("In cases of corporate fraud where the false or misleading information is conveyed in prospectuses, registration statements, annual reports, press releases, or other 'group-published information,' it is reasonable to presume that these are the collective actions of the officers."). Accordingly, the group pleading doctrine allows a plaintiff to plead that defendants made a misstatement or omission of a material fact without pleading particular facts associating the defendants to the alleged fraud. *See* 3 Thomas Lee Hazen, Treatise on the Law of Securities Regulation § 12.13 (5th ed. 2006) (citing cases).

Consistent with the purposes behind the PSLRA, Congress expressly intended to substantially heighten the pleading requirements to reduce abuses in securities class action

lawsuits. *See In re Advanta*, 180 F.3d at 531 (citing H.R. Conf. Rep. No. 104-369, at 28 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 748). To plead fraud in a private suit for damages, plaintiffs must specify each statement alleged to be misleading and specify the reasons the statement is misleading. 15 U.S.C. § 78u-4(b)(1). For allegations based on information or belief, the PSLRA requires plaintiffs to "state with particularity all facts" forming the basis of the belief. *Id.* Each untrue statement or omission must be set forth with particularity as to "the defendant" and scienter must be pleaded in regards to "each act or omission" sufficient to support a strong inference that "the defendant" acted with the required state of mind. 15 U.S.C. § 78u-4(b)(2).

The PSLRA does not address group pleading, nor have we explicitly addressed the doctrine. In *Tellabs* the Supreme Court recognized the disagreement among the courts of appeals as to whether the group pleading doctrine survived the PSLRA. *Tellabs*, 127 S. Ct. at 2511 n.6. Because the issue was not before it, the Court did not disturb the Court of Appeals for the Seventh Circuit's holding that the group pleading doctrine did not survive the enactment of the PSLRA. *Id.*

Winer contends it is untenable to require a plaintiff, at the pleading stage, to identify each individual involved in preparing public statements. But the PSLRA changed the pleading requirements in private securities actions. A presumption of particularity is inconsistent with the PSLRA's requirement that scienter be pleaded with respect to "each act or omission" by

34

"the defendant."

> In any private action arising under this chapter in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.

15 U.S.C. § 78u-4(b)(2). The PSLRA requires plaintiffs to specify the role of each defendant, demonstrating each defendant's involvement in misstatements and omissions.[5]

---

[5]Before the PSLRA, only the Courts of Appeals for the First, Ninth, and Tenth Circuits explicitly recognized a group pleading exception to the pleading-with-particularity requirements of Rule 9(b). The Court of Appeals for the First Circuit recognized a limited version of the group pleading doctrine for securities fraud, which, although characterized as "group pleading," in essence, required specific indicia of defendant's direct participation in making the alleged offending statement. *See Serabian v. Amoskeag Bank Shares, Inc.*, 24 F.3d 357, 367–68 (1st Cir. 1994) ("The acceptance of responsibility for the contents of the Annual Report, demonstrated by defendants' signatures, combined with specific allegations that they knew of conflicting conditions, establishes a sufficient link between the defendants and the alleged fraud to satisfy Rule 9(b)'s

particularity requirement.").  As noted, the Court of Appeals for the Ninth Circuit held: "[i]n cases of corporate fraud where the false or misleading information is conveyed in prospectuses, registration statements, annual reports, press releases, or other 'group-published information,' it is reasonable to presume that these are the collective actions of the officers."  *Wool*, 818 F.2d at 1440.  The Court of Appeals for the Tenth Circuit cited *Wool* to hold: "[i]dentifying the individual sources of statements is unnecessary when the fraud allegations arise from misstatements or omissions in group-published documents such as annual reports, which presumably involve collective actions of corporate directors or officers."  *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1254 (10th Cir. 1997).  Also, the Court of Appeals for the Second Circuit has allowed group pleading, although it has not explicitly used the phrase "group pleading" in any precedential opinions.  *See DiVittorio v. Equidyne Extractive Indus., Inc.,* 822 F.2d 1242, 1247 (2d Cir. 1987) (quoting *Luce v. Edelstein*, 802 F.2d 49, 55 (2d Cir. 1986)) ("'[N]o specific connection between fraudulent representations in [an] Offering Memorandum and particular defendants is necessary where, as here, defendants are insiders or affiliates participating in the offer of the securities in question.'").  The district courts within the Second Circuit have suggested the group pleading doctrine survives the enactment of the PSLRA.  *See, e.g., In re Van Der Moolen Holding N.V. Sec. Litig.,* 405 F. Supp. 2d 388, 399 (S.D.N.Y. 2005) ("The majority rule in this district is that the group pleading doctrine has

36

The only courts of appeals to have directly addressed the survival of the group pleading doctrine post-PSLRA have

survived the PSLRA."). The Courts of Appeals for the Ninth and Tenth Circuits have continued to allow the group pleading doctrine without explicitly discussing whether it survives the PSLRA. *See Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1061–63 (9th Cir. 2000); *Schwartz*, 124 F.3d at 1254.

The Courts of Appeals for the First and Sixth Circuits have recognized the issue but have not decided whether group pleading survives the PSLRA. The Court of Appeals for the First Circuit questioned the viability of group pleading after the PSLRA but has thus far declined to decide the issue. In *In re Carleton Sys., Inc.*, 311 F.3d 11, 40 (1st Cir. 2002), the court held it would not consider the group pleading doctrine in determining whether the complaint stated a claim against each defendant and found liability existed for all but one defendant. *Id.* For that defendant, the court stated even under the group pleading presumption, the result would likely be the same, because the complaint did not allege the defendant's participation in the production of any group published documents such as SEC filings. *Id.* at 41. Similarly, the Court of Appeals for the Sixth Circuit noted the disagreement regarding the viability of group pleading. *City of Monroe Employees Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 689–90 (6th Cir. 2005). In that case the plaintiff failed to allege facts sufficient to qualify under even the group pleading doctrine. *Id.* at 690.

37

abolished the doctrine. *See Fin. Acquisition Partners L.P. v. Blackwell,* 440 F.3d 278, 287 (5th Cir. 2006) (citing *Southland Sec. Corp. v. Inspire Ins. Solutions Inc.,* 365 F.3d 353, 364 (5th Cir. 2004); *Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 437 F.3d 588, 602–03 (7th Cir. 2006) *rev'd on other grounds*, 127 S. Ct. 2499 (2007). Also, the Court of Appeals for the Eleventh Circuit has suggested the group pleading doctrine does not survive the enactment of the PSLRA, although it has not abolished the doctrine. *Phillips v. Scientific-Atlanta, Inc.*, 374 F.3d 1015, 1018 (11th Cir. 2004) (acknowledging "the most plausible reading in light of congressional intent is that a plaintiff, to proceed beyond the pleading stage, must allege facts sufficiently demonstrating each defendant's state of mind regarding his or her alleged violations").

The decision of the Court of Appeals for the Fifth Circuit to abolish group pleading was predicated on the PSLRA's requirements that allegations be set forth with particularity concerning "the defendant" and scienter be pleaded for "each act or omission" sufficient to give "rise to a strong inference that the defendant acted with the required state of mind." *Southland*, 365 F.3d at 364. The Court of Appeals for the Seventh Circuit, citing *Southland* and *Phillips*, also held the group pleading doctrine is inconsistent with the PSLRA. *Makor*, 437 F.3d at 603 ("While we will aggregate the allegations in the complaint to determine whether it creates a strong inference of scienter, plaintiffs must create this inference with respect to each

38

individual defendant in multiple defendant cases.").[6]

We agree and hold the group pleading doctrine is no longer viable in private securities actions after the enactment of the PSLRA.[7] If a private securities case proceeds past the

_____

[6]Winer contends the Court of Appeals for the Seventh Circuit's decision to abolish the group pleading doctrine in *Makor* should be read narrowly as only abolishing group pleading for purposes of inferring scienter. Winer agrees that group pleading cannot be used to prove scienter, but contends it can be used to attribute statements to Individual Defendants. This argument is illogical. *See, e.g., D.E. & J Ltd. P'ship v. Conaway,* 284 F. Supp. 2d 719, 731 (E.D. Mich. 2003) ("Where individual defendants are the target of the fraud allegations, it would be nonsensical to require that a plaintiff specifically allege facts regarding scienter as to each defendant, but to allow him to rely on group pleading in asserting that 'the defendant' made the statement or omission."). If Winer could plead scienter with the specificity required by the PSLRA, it would not need to resort to the group pleading doctrine in the first place.

[7]Most of the district courts in this circuit to address the issue have reached the same conclusion. *See In re Bio-Technology Gen. Corp. Sec. Litig*. 380 F. Supp. 2d 574, 584 (D.N.J. 2005) ("[T]he prevailing authority within this District counsels that group pleading has been abolished.") (citing cases); *see also Majer v. Sonex Research, Inc*., Civ. No. 05606, 2006 WL

39

pleadings stage against a corporation and discovery reveals individual culpability, a plaintiff may seek permission to amend the complaint to assert claims against individual defendants. *See* Fed. R. Civ. P. 15. But any such claims must be pleaded with the specificity required by the PSLRA with respect to each defendant. *See* 15 U.S.C. § 78u-4(b)(2).

As a result, we hold Winer's claims based on the group pleading doctrine fail. All Rule 10b-5 claims against Luter, Cole, and McGreal were properly dismissed, as only the group pleading allegation in paragraph 26 of the amended complaint connects Luter, Cole, and McGreal to the alleged misstatements.[8]

---

2038604, at \*9 (E.D. Pa. July 19, 2006)*; In re Am. Bus. Fin. Servs., Inc. Sec. Litig*., 413 F. Supp. 2d 378, 394 (E.D. Pa. 2005); *P. Schoenfeld Asset Mgmt. LLC v. Cendant Corp.*, 142 F. Supp. 2d 589, 619–20 (D.N.J. 2001); *In re Digital Island Sec. Litig.*, 223 F. Supp. 2d 546, 553 (D. Del. 2002), *aff'd,* 357 F.3d 322 (3d Cir. 2004). At least two district courts in this circuit have assumed the PSLRA did not necessarily abolish the group pleading doctrine in all cases. *See, e.g., In re Rent-Way Sec. Litig.*, 209 F. Supp. 2d 493, 518 (W.D. Pa. 2002) ("We see no reason to find that group pled allegations *per se* cannot meet the heightened pleading standards of Rule 9(b) or the PSLRA, and rather will consider the allegations individually.").

[8]Winer's claims against Queen did not rely solely on the group pleading doctrine because the amended complaint directly

## B. *State Law Claims*

Winer contends the District Court erred by dismissing its state law claims against Luter, Cole, Queen, and Smithfield Foods. As Pennexx was incorporated in Pennsylvania, Pennsylvania law applies to Winer's breach of fiduciary duty claims. *Resolution Trust Corp. v. Cityfed Fin. Corp.*, 57 F.3d 1231, 1236 n.5 (3d Cir. 1995), *vacated on other grounds sub nom. Atherton v. FDIC*, 519 U.S. 213 (1997) ("[T]he applicable law governing the liability of officers and directors for their stewardship of the corporation i[s] the law of the jurisdiction of incorporation."). Under Pennsylvania law, corporate directors owe fiduciary duties of care, diligence, and good faith "solely to the business corporation and may be enforced directly by the corporation or may be enforced by a shareholder, as such, by an action in the right of the corporation and may not be enforced directly by a shareholder or by any other person or group." 15 Pa. Cons. Stat. § 1717. The District Court properly dismissed the fiduciary duty claims against Queen.

Winer's fiduciary claims against Smithfield Foods are derivative of harm to Pennexx and cannot be brought in a direct

---

attributed misstatements and omissions of material fact to Queen, who was regularly quoted in Pennexx's press releases. Winer also asserted that Cole dictated the contents of Pennexx's November 25, 2002 press release. But Winer lacks standing to assert this claim. Accordingly, there is no valid claim against Cole.

41

shareholder action. *See Kauffman v. Dreyfus Fund, Inc.*, 434 F.2d 727, 732 (3d Cir. 1970) ("A stockholder of a corporation does not acquire standing to maintain an action in his own right . . . when the alleged injury is inflicted upon the corporation and the only injury to the shareholder is the indirect harm which consists in the diminution in value of his corporate shares . . . ."). The essence of Winer's claim is that Smithfield Foods engaged in self-dealing at the direct expense of Pennexx, which ultimately resulted in a diminution in value of Pennexx stock. That injury, if proved, belongs to Pennexx, and Pennexx alone has standing to sue as a corporation.

Nonetheless, Winer maintains it may assert direct claims against Smithfield Foods as a majority stockholder rather than derivative claims of Pennexx, because as a controlling shareholder of Pennexx, Smithfield Foods breached its fiduciary duties to the non-controlling/minority shareholders. Winer relies on *Bohler-Uddeholm America, Inc. v. Ellwood Group, Inc.*, 247 F.3d 79 (3d Cir. 2001) for the proposition that non-controlling shareholders may bring direct actions for breach of fiduciary duty. But *Bohler* involved a breach of fiduciary duty between two corporations who entered into a joint venture. The joint venture consisted of only two shareholders. There is no joint venture here. A direct claim may only be brought where the injury is to the shareholder individually. *Davis v. United States Gypsum Co.*, 451 F.2d 659, 662 (3d Cir. 1971). In *Bohler* the one minority shareholder sued the one majority shareholder. Where, as here, the claims asserted are "for the benefit of stockholders *qua* stockholders in a corporation," only a

42

derivative claim may be brought. *Id*. at 662.

Winer also contends that even if its breach of fiduciary duty claim against Smithfield Foods should have been brought derivatively, a direct action is permissible where all of the parties to the dispute are before the court and the corporation is no longer operating as a going concern. Winer relies on an unpublished Delaware Chancery Court decision: "In the partnership context, the distinction between direct and derivative claims becomes irrelevant . . . where a partnership is in liquidation and *all* non-defendant partners in the resulting litigation constitute a uniform class of limited partners." *In re Cencom Cable Income Partnerships L.P. Litig*., Civ. No. 14634, 2000 WL 130629, at *3 (Del. Ch. Jan. 27, 2000). But *Cencom* involved a partnership and not a corporation. The court noted that "in the corporate context, the Court of Chancery is well served by a highly developed body of common law explaining principles that govern the resolution of these disputes [where investors sue the entity controlling the affairs of an enterprise for alleged breaches of duties owed to investors]." *Id*. at *2. Accordingly, the District Court properly dismissed the fiduciary duty claims against Smithfield Foods and the aiding and abetting claims against Luter and Cole.

Winer asserts the District Court erred in not allowing it leave to amend its state law breach of fiduciary duty claims. But the District Court found Winer suffered no injuries that were separate and distinct from those suffered by Pennexx. Therefore, any amendment to the breach of fiduciary duty claim

43

against Smithfield Foods would have been futile. The District Court acted well within its sound discretion to make this determination.

## V. Conclusion

The District Court properly dismissed Winer's breach of fiduciary duty claims and all claims based upon statements or omissions made prior to May 22, 2002. After plaintiffs' attempts to substitute a new lead plaintiff failed, the District Court properly dismissed the case for lack of prosecution.

For the reasons set forth, we will affirm the judgment of the District Court.