SIDNEY S. WILHELM AND SOLON H. WILHELM V. THOMAS H. FAGAN, SUPERVISOR OF THE TOWNSHIP OF HOLLY.

*Deed—Delivery—Acceptance—Mandamus.*

The passage of a resolution by a township board accepting a deed of a site for a town-hall, which the grantors had deposited with an attorney for delivery when a warrant for the purchase price was drawn and the money paid over, which warrant was afterwards ordered to be drawn in favor of the grantors, is not equivalent to such delivery, and *mandamus* will not lie at the instance of the grantors to compel the supervisor of the township to sign said warrant, there being no valid executory contract for such purchase.

*Mandamus.* Submitted October 27, 1891. Denied January 22, 1892.

Relators applied for *mandamus* to compel respondent to sign a warrant for the purchase of a town-hall site. Issue tried in the Oakland circuit, before Moore, J. The facts are stated in the opinion.

*Wisner & Draper,* for relators.

*F. A. Baker,* for respondent.

McGRATH, J. This is an application for a *mandamus* to compel the supervisor of the township of Holly to sign a warrant for the purchase of a site for a town-hall.

At the annual meeting of the township, held April 1, 1889, a majority of the electors voted to raise the sum of $3,500 for the purpose of erecting a town-hall. The amount so voted was levied and collected. The records of the township board relating to the matter are as follows:

"HOLLY, MICH., May 12, 1890.

"Meeting of the township board, held at the office of C. F. Collier, to act with the village council, for the purpose of selecting a site on which to build town-hall. Officers present: T. H. Fagan, supervisor; C. C. Waldo, justice of the peace; J. G. Mitchell, justice of the peace; and S. Henry Mothersill, clerk.

"Upon motion the site selected by the joint boards, being that known as the 'Wilhelm Property,' situated just south of the D., G. H. & M. R. R., bounded on the east and west by Broad and Saginaw streets, was approved. No further business; the board adjourned."

"May 21, 1890.

"Meeting of the township board, held at the office of C. F. Collier. Officers present: Fagan, supervisor; Waldo and Mitchell, justices of the peace; Mothersill, clerk. The following resolution was offered:

"'Resolved, by the township board of the township of Holly, that the deed for the site of the town-hall to be built by the township of Holly and corporation of Holly, Michigan, be given to the township of Holly, and that a perpetual lease of the premises be given the village of Holly, subject to the right of the township.'

"The resolution was upon motion adopted."

"May 26, 1890.

"Meeting of the township board, held at the council rooms of the village of Holly. Members present: T. H. Fagan, supervisor; C. C. Waldo and J. G. Mitchell, justices; S. Henry Mothersill, clerk.

"Moved and supported that an order for $500 be drawn in favor of S. S. Wilhelm & Bro., for town-hall site. Motion carried.

"Upon motion, J. M. Beard was given permission to remove all buildings on said site upon completion of said hall.

"No further business; the board adjourned to one week from this date."

Petitioners had offered to sell the site in question to the board for the sum of $600, and afterwards offered to look to Beard for the amount which he agreed to pay for the buildings. No contract or other writings were entered into between petitioners and the township prior to the execution of the deed by relators. Prior to the

meeting of the board held on May 26 relators had executed and sent to C. F. Collier, an attorney at the village of Holly, a deed of the property, running to the township. Relators set up that this deed was delivered and accepted by the township. Respondent answers, admitting the execution of a deed of the property, and that it was forwarded to Collier, their attorney and agent at Holly, to be delivered to the township on the payment of said sum of $500 to Collier for relators. He denies that the township board accepted relators' offer, or that said deed was delivered to or accepted by said township. He sets up that said order for said sum has never been drawn and signed and delivered to said relators, and avers that there is no agreement or contract existing under and by which relators can compel said township to accept said deed, and to pay relators the said sum. He avers that a majority of the electors of said township are opposed to the site selected, and, in consequence, the township board is equally divided upon the question whether the purchase of said site should be consummated.

Upon the filing of said return an issue was framed, and two questions were sent to the circuit court for Oakland county for determination, viz.:

"1. Was the deed from the relators to the township of Holly delivered and accepted by the township board?

"2. If you say 'Yes' to the above, when was it so delivered and accepted?"

The record of the trial discloses the fact that the circuit court directed the jury to answer the first question "Yes," and to answer the second, "May 26, 1890." Exceptions were taken to the court's direction. Upon the trial the relators contended that the records of the meeting of the township board held May 26, 1890, did not contain all the proceedings, and introduced testimony which tended to show that the first motion appearing in

the records was in fact " that the deed be accepted and
an order drawn," etc. It appeared that Collier was present
at that meeting, and stated to the board that the title
was perfect and the deed properly made out; that he was
present at the meeting held May 21, and told the board
what the land could be bought for, and the board insisted
upon having an abstract of title. One of the relators
was sworn, and testified as follows:

"*Q.* State whether or not Mr. Charles F. Collier was
authorized to deliver that deed to the township of Holly.
  "*A.* He was.
  "*Q.* And was so authorized on or before the 26th
day of May, 1890?
  "*A.* Yes, sir.
  "*Q.* Since you placed that deed in Mr. Collier's pos-
session, have you had it since?
  "*A.* No."

On cross-examination the witness stated that the only
instructions given Collier were by letter. The letters
were introduced, and were all dated at East Saginaw,
and signed by S. S. Wilhelm, except one, which was
dated May 26, 1890, at Milford, and signed, "S. H.
Wilhelm."

The letters were as follows:

"May 14, 1890.
  "*Dear Charlie:* I received the deed this p. m. I have
signed and sent it to Solon, with directions to send it
to you Monday. You can collect the money, and send
it to me. I wrote J. M. Beard that he could give his
three-months note with 7 per cent. interest for $100 in
payment of his one hundred dollar donation; so you will
please accept it in place of cash. Take out for abstract
and your fees. Please close it, and send to me as soon as
you can."

"May 26, 1890.
  "C. F. COLLIER, Esq.,
      "Holly, Mich.
  "*Dear Charles:* Please find deed. You send money to
S. S., at East Saginaw, and it will be all right."

"May 19, 1890.
" C. F. COLLIER, ESQ.:

"Yours of 16th at hand. No; I cannot find abstract here. Please order one from Pontiac. I cannot think where it has been placed. Solon would not have it, as I have all of our papers here or at Holly. Please get this around as soon as you can, and make deed for Solon and I to sign."

"May 14, 1890.
" C. F. COLLIER, ESQ.—

"*Dear Sir:* I cannot find abstract of Donalson lot. Please see T. E. Boker, and find out by him where it is. I now think I never had it here. Send deed to sign as soon as you get it ready,—that is, in the name of Solon and myself."

"May 23, 1890.
"*Dear Charlie:* Have you received the abstract? If so, please send deed for us to sign. I want to get this matter closed. I intended to go to Holly to-day, but found it was not necessary."

"May 31, 1890.
"*Dear Charlie:* How is the trade coming on, and have you closed it? I have been busy all the week trying to close a sale in Minnesota, but have not done so yet. Write me Monday what you have done."

Collier was sworn for respondent. He denied that he had acted for the township; insisted that he was acting for relators; that his understanding of the letters was that when he got the money he was to turn over the deed to the township, and not before; that the deed was in his possession, where it had been ever since he received it from the Wilhelms; that he had not delivered it to the township; that no tender of the amount had been made to him; that he had no intention of delivering the deed at any time until he received the money; that he was present at the meeting of the township board held May 21, and after the meeting some member of the board asked witness if he would draw the lease referred to in the resolution adopted at that meeting; that the township board had never asked him to do anything with

reference to procuring the property or the deed from the Wilhelms. There was no testimony tending to show Collier's employment by the township, or that he acted as the agent of the township board in the negotiations; but the testimony does show that he acted in the procurement of the abstract and in the preparation of the deed as attorney for the Wilhelms, who were to pay for the abstract, and also Collier's fees. Wilhelm did not repudiate the employment of Collier, nor did the township claim to have employed him. Wilhelm did not regard the delivery to Collier as a delivery to the township, nor was there any evidence tending to show that the Wilhelms intended to part with the possession of this deed, or that the title should vest in the township, until the money was paid.

This is not a proceeding on behalf of the township to compel one of its officers to comply with an order made by the town board, but it is instituted by a stranger, to compel a supervisor to sign a warrant in favor of such stranger. In order to entitle relators to the relief sought, they must show the existence of a valid and binding executory contract, or a contract executed so far as the relators are concerned. There existed no binding executory contract, and to entitle relators to the relief sought they must show an actual delivery of that deed to the township. It is not enough that the township passed a resolution accepting it, provided the instrument itself was not to be actually delivered to the township until the warrant was drawn and the money paid over. Until that was done, there was nothing to prevent relators from refusing to perform. The intention of the grantee alone is not sufficient to vest the title in the township, and the intention of the grantors is not to be sought for in a resolution passed by the grantee.

The learned judge to whom it was referred to try the

issues presented assumed the acceptance by resolution to be equivalent to delivery, and directed a verdict accordingly. In this we think the court erred, and, inasmuch as there was no evidence tending to show that the instrument was actually delivered to the township, and none tending to show that there was any intention of parting with its possession until the money was paid over, the *mandamus* must be denied, with costs to respondent.

MORSE, LONG, and GRANT, JJ., concurred. CHAMPLIN, C. J., did not sit.