**Daniel MOORE, et al.**

v.

**JOHNSON & JOHNSON, et al.**

**Civil Action No. 12–490.**

United States District Court,
E.D. Pennsylvania.

Filed Feb. 4, 2014.

Irene M. McLafferty, Joseph L. Messa, Jr., Thomas N. Sweeney, Messa & Associates, Philadelphia, PA, for Daniel Moore, et al.

David F. Abernethy, Melissa A. Graff, Meredith Nissen Reinhardt, Drinker, Biddle & Reath LLP, Philadelphia, PA, Christy D. Jones, Butler Snow LLP, Ridgeland, MS, James C. Barton, Jr., Butler Snow LLP, Birmingham, AL, Michael B. Hewes, Butler Snow LLP, Gulfport, MS, Sarah Elizabeth Moccaldi, Butler Snow LLP, Memphis, TN, for Johnson & Johnson, et al.

## ORDER

MARY A. McLAUGHLIN, District Judge.

AND NOW, this 4th day of February, 2014, upon consideration of the Contractor Defendants' Motion to Dismiss (Doc. No. 31), and the opposition and reply thereto, IT IS HEREBY ORDERED that the motion is GRANTED. The plaintiffs' claims against defendants Inmar, Inc., Carolina Supply Chain Services, LLC, Carolina Logistics Services, LLC, and WIS International, are DISMISSED with prejudice, pursuant to Fed.R.Civ.P. 12(b)(1).

The Complaint names Inmar, Inc., Carolina Supply Chain Services, LLC ("CSCS"), Carolina Logistics Services, LLC ("CLS"), and WIS International ("WIS") (together the "Contractor defendants") as defendants, the entities involved

in the 2009 "phantom recall" of Motrin IB and the 2010 "market assessment" of Children's Tylenol products.[1] The claims asserted against the Contractor defendants are those that are asserted against "all defendants," including a violation of consumer protection laws, civil conspiracy, aiding and abetting, and punitive damages. The plaintiffs lack standing to bring their claims against the Contractor defendants, however.

■ Standing is a threshold issue, and must be established as to each claim alleged in the Complaint in order to invoke federal jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *Toll Bros., Inc. v. Township of Readington*, 555 F.3d 131, 139 n. 5 (3d Cir.2009). Article III standing requires a causal relationship between the plaintiff's injury and the conduct complained of. *Winer Family Trust v. Queen*, 503 F.3d 319, 325 (3d Cir.2007) (citations omitted). In order to satisfy the causation requirement, the plaintiffs must establish that the injuries in question "fairly can be traced to the challenged action" of the Contractor defendants, rather than to the action of an independent third party. *Whitmore v. Arkansas*, 495 U.S. 149, 155, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990); *Toll Bros., Inc.*, 555 F.3d at 137–38. An indirect causal relationship may suffice if there is a "substantial likelihood" that the defendants' conduct caused the plaintiffs' harm. *Pub. Interest Research Grp. of New Jersey, Inc. v. Powell Duffryn*

*Terminals, Inc.*, 913 F.2d 64, 72 (3d Cir. 1990).

There are very few factual allegations against the Contractor defendants in the Complaint. The Complaint alleges that, in 2008, J & J and McNeil hired the Contractor defendants "to perform a clandestine phantom/stealth recall to remove" defective packages of Motrin IB 200 from retail stores. This phantom recall involved representatives of the Contractor defendants visiting various retail stores and purchasing all of the Motrin IB on the shelves, acting as regular customers. Compl. ¶¶ 31–34, 87, 93–94.

■ This activity has nothing to do with the plaintiffs' injuries, however. The Moores do not allege that they purchased or ingested Motrin IB 200. River Moore ingested Children's Tylenol, which allegedly caused his death. Compl. ¶¶ 180–184. The plaintiffs do not allege that the phantom recall caused them any injury. Nor is it plausible that any alleged conspiracy to hide the defective Motrin IB from the public could have possibly caused River Moore's death or any related injury to the Moores.

The only other allegation related to the Contractor defendants is that, in July 2009, "instead of simply recalling the defective product, J & J and McNeil once again utilized the services of Inmar to conduct a market assessment to determine how much product remained on store shelves."[2] Compl. ¶ 102. One month la-

1. In the section naming the defendants, the Complaint alleges that Inmar and WIS were hired by J & J and McNeil to conduct the 2009 "phantom recall" of Motrin and "other 'market assessments,' including market assessments related to the April 30, 2010 recall" of Children's Tylenol. CSCS is or was a subsidiary of Inmar, and was also involved in the phantom recall and market assessments alleged. CLS is the sole surviving entity of a

2008 merger between CSCS and CLS. Compl. ¶¶ 31–34.

2. This is the only statement regarding the market assessments in the Complaint outside of the section naming the defendants. This statement mentions only Inmar, Inc. and not any of the other Contractor defendants. Because the section naming each defendant alleges that each of the Contractor defendants

ter, J & J and McNeil initiated a formal recall of the product. *Id.* ¶ 104. The Complaint does not define "market assessments" and does not explain why such assessments are unlawful or how they caused injury to the Moores.

In their response to the defendants' Motion to Dismiss, the plaintiffs state that the "market assessments" were used "to quantify the J & J Defendants' financial exposure from the defective pediatric over-the-counter medicines they allowed to remain on store shelves."[3] Pl.'s Opp'n at 1. The plaintiffs argue that the their "injury stems directly from the fact that the [Contractor] Defendants secretly quantified how much defective Children's Tylenol remained on store shelves, and kept that information from the public." Pl.'s Opp'n at 6.

The plaintiffs argue that the Contractor defendants' acts allowed the J & J defendants to conceal the manufacturing defects of Children's Tylenol. If the Contractor defendants had not been involved, Katy Moore would not have purchased the Children's Tylenol that caused River Moore's Death. *Id.* at 2. The plaintiffs "seek wrongful death and survival damages from the [Contractor defendants] for their role in hiding the dangers of the J & J Defendants' pediatric over-the counter drugs." *Id.* at 3.

This same argument was made by the plaintiffs in *In re McNeil*, 2011 WL 2802854 (E.D.Pa. July 15, 2011), with respect to the Contractor defendants' involvement in the phantom recall of Motrin IB. In that case, the plaintiffs argued that, "by conducting a 'phantom recall,' the Con-

tractor Defendants helped the J & J Defendants to unlawfully conceal the fact that the Subject Products ... were substandard and defective." *In re McNeil*, 2011 WL 2802854, at *15 (citations omitted). They also argued that, "had the Contractor Defendants not participated in the 'phantom recall,' the J & J Defendants would have been forced to publicly disclose the defective nature of their Subject Products and would have issued a broader recall." *Id.* at *15.

The Court held that the plaintiffs failed to establish causation as to any plaintiffs who had purchased Motrin IB after the "phantom recall":

> First, there are no allegations that the Contractor Defendants participated in, or had influence over, the decision to conduct a "phantom recall," or decisions regarding the scope of said recall. Second, the plaintiffs have not alleged that the Contractor Defendants had any knowledge of the specific defects affecting Motrin IB, such that they would have or should have refused to conduct a "phantom recall." Finally, even if the Contractor Defendants had refused to conduct a "phantom recall," there is no basis for assuming that the J & J Defendants would have been unable to find other contractors to conduct the recall, or that the J & J Defendants otherwise would have foregone a "phantom recall" in favor of a public recall. The plaintiffs' theory of causation, therefore, hinges on the Contractor Defendants' possessing a degree of influence over the J & J Defendants that is not plausible based on the limited allegations in the CAC. Instead, the plaintiffs' injuries

---

was involved in the market assessments of Children's Tylenol, the Court assumes the plaintiffs allege that all of the Contractor defendants were involved in conducting these market assessments.

**3.** The plaintiffs also seem to claim, in their opposition, that the Contractor defendants conducted a "phantom recall" of Children's Tylenol, but such an allegation is not included in the Complaint. Pl.'s Opp'n at 2.

appear to be based on conduct more appropriately attributed to the J & J Defendants alone.

*In re McNeil,* 2011 WL 2802854, at *16.

The same analysis applies here. The Complaint's only allegation is that the Contractor Defendants were hired to conduct a "market assessment." The Complaint does not allege that the Contractor defendants knew or should have known that the products involved in the "market assessment" were defective or dangerous. There are no allegations that the Contractor defendants had any influence over J & J's decision to conduct a market assessment, that the market assessment was wrongful in any way, or that the market assessment influenced the way J & J and McNeil conducted the recall of the Children's Tylenol products.

The Complaint does not establish how the Contractor defendants' performance of a market assessment to determine the amount of product on store shelves in July 2009 could have possibly caused Katy Moore to purchase defective Children's Tylenol or administer it to River Moore. The plaintiffs have therefore failed to establish Article III. causation, and lack standing to bring their claims against the Contractor Defendants.