OPINION
BARRY, Circuit Judge.
In this securities fraud class action, the District Court dismissed all claims against the corporate defendants and five of the individual defendants. The lead plaintiff appeals. We will affirm.
I. BACKGROUND
Because we write only for the parties, we set forth only the facts and procedural history necessary for our analysis. Horizon Lines, Inc., and its wholly owned subsidiary, Horizon Lines, LLC (collectively “Horizon”), are shipping companies. This case is bottomed on securities fraud claims that arise out of price fixing in Horizon’s shipping business from the United States to Puerto Rico, which is a limited, oligopo-listic market that comprised about a third of Horizon’s business during the time period at issue. Horizon held its initial public offering (“IPO”) on September 26, 2005. The price fixing conspiracy became public on April 17, 2008, when the Department of Justice and the FBI executed search warrants on Horizon and Horizon issued a statement acknowledging the investigation. On April 25, 2008, Horizon announced that “its revenue and earnings were not sustainable.” (R. at A-448.) Its stock price plummeted after both announcements.
There are eight individual defendants in this matter, all of whom hold or held management or executive positions at Horizon. Three of them — Gabriel Serra, R. Kevin Gill, and Gregory Glova (collectively “Puerto Rico managers”) — pled guilty to price fixing in the Puerto Rico market from May of 2002 to April of 2008. No criminal charges have been filed against the other five individual defendants: Charles Raymond, Mark Urbanía, John Keenan, John Handy, and Brian Taylor (collectively “senior executives”). After the parties filed their briefs on appeal, Horizon Lines, LLC, itself pled guilty to price fixing charges, for which it had re-spondeat superior liability.
The Police and Fire Retirement System of the City of Detroit is the lead plaintiff in this putative securities class action case. In brief, it alleges that defendants made statements about Horizon’s financial health, in particular explaining why Horizon was increasing shipping rates and otherwise doing well in a tight Puerto Rico market, and that those statements were false because the company’s apparent well-being in Puerto Rico was due to price fixing, not the reasons Horizon and its executives identified.
The District Court granted the motion of Horizon and the senior executives to dismiss all claims in the Amended Consolidated Securities Class Action Complaint (“Amended Complaint”).[1] It held that the senior executives made materially false statements, but nonetheless dismissed the *674 claims against them because there were insufficient allegations to raise a strong inference that they made those false statements with scienter. The Court conversely held that the Puerto Rico managers acted with scienter, but that they did not make material false statements on which plaintiff relied. As to Horizon, the Court concluded that it could not be liable because there were not sufficient allegations that an individual defendant both made material false statements, on which the plaintiff relied, and acted with scienter.
II. ANALYSIS[2]
Plaintiff brings its claims pursuant to Section 10(b) of the Securities Exchange Act of 1934 and the Securities and Exchange Commission’s Rule 10b-5.[3]
To state a claim for securities fraud under Rule 10b-5, plaintiffs must “allege defendants made a misstatement or an omission of material fact [“material false statement”] with scienter in connection with the purchase or the sale of a security upon which plaintiffs reasonably relied and plaintiffs [sic] reliance was the proximate cause of their injury.”
Inst. Investors Grp. v. Avaya, Inc., 564 F.3d 242, 251 (3d Cir.2009) (quoting Winer Family Trust v. Queen, 503 F.3d 319, 326 (3d Cir.2007)).
We are reviewing the grant of motions to dismiss the Amended Complaint. As with any motion to dismiss, we assume that the facts pled in the Amended Complaint are true, and we “consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss.” Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007). A plaintiff alleging securities fraud violations, however, “must satisfy the heightened pleading rules codified in the PSLRA [Private Securities Litigation Reform Act].” Avaya, 564 F.3d at 252; see also Merck & Co. v. Reynolds, — U.S. -, -, 130 S.Ct. 1784, 1796, 176 L.Ed.2d 582 (2010) (“Indeed, Congress has enacted special heightened pleading requirements for the scien-ter element of § 10(b) fraud cases.”). Those heightened pleading rules require that
the complaint must specify each allegedly misleading statement, why the statement was misleading, and, if an allegation is made on information and belief, all facts supporting that belief with particularity. Second, the complaint must, with respect to each act or omission alleged ... state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.
Avaya, 564 F.3d at 252-53 (internal quotation marks, citations, and footnote omitted).
“Scienter is a mental state embracing intent to deceive, manipulate, or defraud, and requires a knowing or reckless state of mind.” Id. at 252 (internal quotation marks and citations omitted). In this context, the standard for recklessness is high:
[a] reckless statement is one involving not merely simple, or even inexcusable negligence, but an extreme departure *675 from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it.
Id. at 267 n. 42 (internal quotation marks omitted). Allegations akin to corporate mismanagement are not sufficient. Id. In analyzing whether there is a strong inference of scienter, we
weigh the plausible nonculpable explanations for the defendant’s conduct against the inferences favoring the plaintiff. A strong inference of scienter is one that is cogent and at least as compelling as any opposing inference of nonfraudulent intent. The pertinent question is whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard.
Id. at 267-68 (internal quotation marks and citations omitted). “[T]he inference of scienter must be more than merely ‘reasonable’ or ‘permissible’ ” but “need not be irrefutable.” Tellabs, 551 U.S. at 324, 127 S.Ct. 2499. This is judged from the perspective of a “reasonable person.” Id. at 326, 127 S.Ct. 2499. “[Ojmissions and ambiguities count against inferring scienter.” Id.
We substantively agree with the District Court’s resolution of the defendants’ motions to dismiss. There is no need to retrace all of the ground that the Court so ably covered in its lengthy and extraordinarily thorough opinions, and we address below only the few issues that merit some further discussion.
Our dissenting colleague concludes that the Amended Complaint pled sufficient facts to raise a strong inference that the senior executives acted with scienter when they made material false statements, and thus that there were sufficient allegations of Horizon’s scienter, as well.[4] The dissent notes, for example, that the Puerto Rico market was a significant portion of Horizon’s business, that the conspiracy went on for six years, that Urbanía left Horizon under unusual circumstances, and that Horizon had an IPO during this period, which would have required senior management to take a close look at the company’s finances.
The dissent focuses not on the District Court’s analysis of each of these allegations but rather on the brevity of the Court’s explicit discussion of the totality of the facts related to scienter. That specific section of the Court’s opinion was brief, but it followed a lengthy discussion as to why each scienter-related allegation added little, if anything, to plaintiffs side of the scienter scale. The Court did not need to explain at length that the total weight of these allegations was also scant. To put it succinctly, it does not take much to explain that zero plus zero equals zero.[5]
*676 The PSLRA places a weighty burden on plaintiffs, and in accord with the District Court, we conclude that plaintiff did not plead sufficient facts, when viewed in their totality, to raise a strong inference of scienter as to the senior executives. Horizon’s scienter, thus, cannot be based on the scienter of any individual.
The question remains whether plaintiff may otherwise plead scienter as to Horizon, and if so, whether it has done so. The District Court applied the Fifth Circuit’s approach in Southland Securities Corp. v. INSpire Insurance Solutions, Inc., in which the court recognized that statements of executive officers may be attributed to a corporation when they are “made pursuant to their positions of authority within the company.” 365 F.3d 353, 366 (5th Cir.2004). But with respect to whether a corporation had the scienter to make the statements, the Fifth Circuit held that
it [is] appropriate to look to the state of mind of the individual corporate official or officials who make or issue the statement ... rather than generally to the collective knowledge of all the corporation’s officers and employees acquired in the course of their employment.
Id. Because there was no individual at Horizon who made actionable statements with scienter, the Court concluded that plaintiff had not pled scienter against Horizon.
Plaintiff contends, however, that it may plead scienter against the corporation without successfully pleading a claim against any individual. It primarily relies on two cases, but the facts in both cases are distinguishable from those alleged here, and so we will discuss them only briefly. In City of Monroe Employees Retirement System v. Bridgestone Corp., Bridgestone and its subsidiary Firestone had information that their tires were rupturing and causing, among other things, a significant number of rollover accidents. 399 F.3d 651, 656-59 (6th Cir.2005). Bridgestone and Firestone engaged in a variety of tactics, such as a large-scale secret settlement with State Farm Insurance Co., to keep the scope of the problem from safety regulators in the United States and several other countries, as well as from investors. Id. at 658-59. When the truth came out and the stock declined, plaintiffs filed a suit under the PSLRA. The Sixth Circuit affirmed the dismissal of the claims against the individual defendants but nonetheless held that the facts supported scienter for corporate defendants. Id. at 690-91.
The alleged wrongdoing in Bridgestone was, however, extraordinary, akin to the facts imagined by the Seventh Circuit in this hypothetical:
Suppose General Motors announced that it had sold one million SUVs in 2006, and the actual number was zero. There would be a strong inference of corporate scienter, since so dramatic an announcement would have been approved by corporate officials sufficiently knowledgeable about the company to know that the announcement was false.
Makor Issues & Rights, Ltd. v. Tellabs, Inc., 513 F.3d 702, 710 (7th Cir.2008).
Although the price fixing conspiracy at Horizon was long-lasting and affected a substantial portion of Horizon’s business, the facts pled here are a far cry from those in Bridgestone or in the Seventh Circuit’s hypothetical,[6] and we need not decide whether we agree with either approach. Even if, however, it were possible to plead *677 scienter against a corporation without pleading scienter against an individual, the facts alleged here would not survive a motion to dismiss.
III. CONCLUSION
We will affirm the judgment of the District Court.

. The District Court previously granted a motion to dismiss the original Consolidated Securities Class Action Complaint. The Puerto Rico managers did not file a motion to dismiss either complaint, but after the Court granted the motion of Horizon and the senior executives to dismiss the Amended Complaint, the Court issued a final judgment under Fed.R.Civ.P. 54(b) in favor of all defendants except the Puerto Rico managers. The claims against the Puerto Rico managers remain pending in the District Court, where this case is stayed until the resolution of this appeal.

. The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337, and we have jurisdiction pursuant to 28 U.S.C. § 1291.

. In addition to dismissing the claims under § 10(b) and Rule 1 Ob-5, the District Court dismissed plaintiffs claims under § 20(a), which "creates a cause of action against individuals who exercise control over a ‘controlled person,’ including a corporation, that has committed a violation of Section 10(b). Accordingly, liability under Section 20(a) is derivative of an underlying violation of Section 10(b) by the controlled person.” Inst. Investors Grp. v. Avaya, Inc., 564 F.3d 242, 252 (3d Cir.2009) (citation omitted). Because the Court correctly dismissed the § 10(b) claims, we will not further address § 20(a).

. The dissent appears to agree, as we do, with the District Court's conclusion that the Puerto Rico managers did not make statements that would be actionable under the securities laws.

. Plaintiff and the dissent also highlight two facts from related criminal proceedings. In the case against Gill, the government stated that Gill had provided evidence against " 'his superiors’ ” at Horizon, " ‘including presently uncharged coconspirators.’ ” (R. at A-446-47.) The government neither named any of these “superiors" nor, so far as we know, charged any of them with any crimes. This vague statement is insufficient to strengthen the scienter allegations for any individual senior executive.
After the parties filed their briefs in this appeal, Horizon Lines, LLC, pled guilty to antitrust violations. Given Horizon's respon-deat superior liability, this is an unremarkable event, and we will not speculate about the government’s motivation in bringing the charges against Horizon. We have no way of knowing whether the government "had information indicating that [Horizon’s] senior *676 management was involved in the conspiracy.” (Dissent, Draft Slip. Op. at 681.)

. For example, it is not as though Horizon did no shipping in the Puerto Rico market while claiming that business there was going well.